Case number 4-18-0240, Onken's American Recyclers et al. v. California Insurance Company et al. and Plemons Associates Incorporated. Appearing for appellant is Attorney Joseph Roselius. Yes, correct, Your Honor. Is that how you pronounce your name? Yes, that's how it's pronounced. Okay, thank you. And for the appellee is Attorney Robert Hermes. Yes, Your Honor. All right, good morning. Mr. Roselius, are you ready to proceed? I am, Your Honor. You may. Good morning, may it please the Court. Onken failed to challenge the delegation clause in the incorporation of the AAA rules and the circuit court erred by doing so for them, then compounded that error by applying the Nebraska Uniform Arbitration Act rather than the AAA rules and the Federal Arbitration Act to the Reinsurance Participation Agreement, or RPA. This appeal ultimately comes down to those two issues. First, Onken did not challenge the validity of the delegation provision until the circuit court raised it at oral argument and has never challenged, even on appeal, the validity of the RPA's incorporation of the AAA rules. The circuit court erred by, nevertheless, sui sponte, raising that issue, deciding it, and then allowing Onken to back into it. This Court should reverse on that basis alone and order Onken to arbitrate the gateway question of whether or not the arbitration clause is invalid before the AAA. Second, the 2012 RPA includes a generic choice of law clause selecting Nebraska law, but the choice of law clause does not require the parties to arbitrate under Nebraska law or otherwise incorporate the Nebraska Uniform Arbitration Act. The circuit court, again, erred by, nevertheless, applying the Nebraska Uniform Arbitration Act rather than the AAA rules, which incorporate, essentially, the Federal Arbitration Act, and invalidating the arbitration and delegation provisions on that basis. And this Court could also reverse on that basis. I'm also happy to discuss the jurisdictional question because I know that was raised on the briefs, but unless you think that's, if you think that's necessary, otherwise I'm happy to move on to the merits. I would say that for the best use of time, I'll move on to the non-jurisdictional issues. So, coming back to the first issue, whether Onken failed to challenge the validity of the two independent delegation provisions before the circuit court raised that issue. Onken, in its complaint, in its opening brief on its motion to stay the arbitration, did not mention the delegation provision or the AAA rules clause. And just so we're all clear on the terminology here, under the U.S. Supreme Court's Rennes Center decision, you look at these arbitration agreements and contracts containing arbitration agreements as being composed of three parts. There's the contract as a whole, which here is the RPA. There's the arbitration provision, which here is Section 13 of the RPA. And then there's the delegation provision. And here there are two separate independent bases for delegation. One is the delegation clause, which is in Section 13B and requires that all disputes between the parties relating in any way to the construction or enforceability of the agreement go to arbitration. And the last sentence there, which says all disputes arising with respect to any provision of this agreement are fully subject to the terms of the arbitration clause. There are numerous courts, federal appellate courts, federal district courts,  which in nearly identical agreements is a delegation clause. Second, it incorporates the AAA rules, and that's in Section 13I of the RPA. Arbitration shall be conducted in accordance with the rules of the AAA. Again, numerous courts treat both the incorporation of the AAA rules in general, but also the incorporation in this specific agreement as being a delegation provision. In its opening brief, in its responses, and at oral argument before the circuit court raised the issue, Ankin never challenged the validity, unconscionability of either provision. In fact, it even accused the applied defendants, the appellants, of mischaracterizing the parties dispute as a dispute over the validity of the delegation clause. But nevertheless, at the oral argument, the circuit court said, were I to rule today that I believe that Mr. Hermes, meaning Ankin's counsel, has raised the delegation issue in the trial court, and if I believe that pursuant to Renner Center that he has raised that issue, then I think even Renner Center says that the court hears the validity of the argument. And then on page 19 of the report of proceedings, we're at the trial court phase here. It seems to me we're in a different spot, that the plaintiff has in fact raised the delegation issue at the trial court level, maybe not in the first instance, but ultimately by way of their filings, they have. At that point, it would have practically been malpractice for Ankin's counsel not to stand up and say, of course I'm challenging the delegation provision. But the fact remains, Ankin had not done so before the circuit court said that. Why does that matter? Because that's under Renner Center, under decades of U.S. Supreme Court jurisprudence, under Illinois Supreme Court cases, the party who is seeking to challenge arbitration must specifically and directly challenge the delegation provision, not just the agreement as a whole or the arbitration provision as a whole. In OFR's brief opposing the motion to compel, didn't they argue that the arbitration provision did not clearly and unmistakably delegate the question of arbitrability to the arbiters and that reference to the AAA provisions and the arbitration provisions did not alter that conclusion? Yes, but that's the difference between a challenge to the validity of an arbitration provision and a challenge to its scope. A challenge to the scope must, going all the way back to Moses Cone, that the scope of the arbitration clause is decided with a presumption in favor of arbitrability. And the circuit court didn't do that here. All that they challenged was whether or not the delegation clause was in fact a delegation clause, not whether it was invalid under the Nebraska Uniform Arbitration Act, not whether it was unconscionable. In fact, if you look at what they actually do in their brief, when they start talking about unconscionability, which is the challenge to the validity of the clause, the delegation provision, the AAA rules, they're not mentioned again. The only challenge was to the scope and the circuit court was required to look at the broad delegation provision and compel arbitration. And of course, this is all after the applied defendants made this very clear in their briefs. It goes back to when Onken said that the applied defendants were mischaracterizing their challenge as a challenge to the validity of the delegation provisions. They walked away from it and it was only after the circuit court said, if I do this, that I'm going to decide the issue, that they turned around and said, okay, we're challenging the validity of the delegation. So what does the holding in Rennes Center say other than that you have to raise it sometime before you get to the U.S. Supreme Court? That's actually, Rennes Center is interesting because the reason why Rennes Center did that, you actually have to look at the footnote and what was going on there. The Supreme Court didn't say, you can hold your challenge to the delegation provision until it gets to us. What happened was there was an intervening Supreme Court decision that created the basis for the challenge in Rennes Center and the party that was making the challenge didn't raise it. They had, I think, a year and a half between that Supreme Court decision and when it finally got to the Supreme Court to challenge it. But the Supreme Court wasn't saying, you can hold your challenge. And in fact, that goes against, there are literally thousands of cases around the country where trial courts compel arbitration because a party didn't challenge a delegation provision. To hold that the Supreme Court in Rennes Center actually meant you can wait and challenge it when it gets to the Supreme Court or the appellate court would basically make all of those cases somehow improper. It also, there's a ruling on that kind of a basis not only would cause problems for all those cases compelling arbitration based on the failure to challenge a delegation provision, but it also theoretically would require the circuit courts or the appellate courts to raise those issues on behalf of the litigants. Because otherwise you're in a situation where if the circuit court doesn't raise this sua sponte, then a plaintiff who didn't raise it is now hamstrung by the fact that one judge is raising these issues on behalf of the plaintiffs and others aren't. And that doesn't make any sense. We're to discount the statement of the trial judge where he found that plaintiff's counsel had devoted a substantial amount of argument to cases that get to the validity of the delegation clause and make a distinction between arbitrability and the validity of that delegation. None of that was done before the circuit court decided the issue. I mean, I suppose maybe he didn't actually technically decide the issue. He just said, if I were to decide that issue, if you had made that challenge, then I would decide the unconscionability of the delegation clause and we would go down that road. I mean. When did he make that statement? It's on the report of proceedings, page 18. But the date. Oh. The reason I'm asking is that plaintiffs did raise the issue in regards to the delegation clause in their reply in support of the motion to stay, and that was March of 2017. So the statement by the court that you're referring to, was that before or after March of 2017? Your Honor, I think we're talking about two different things. The statement was after that brief, but that brief did not challenge the validity of the delegation provision, only its scope. You keep saying that, but I'm trying to see the distinction. When they say that they don't believe that it applies, you characterize that as, well, they're challenging the scope. It sounds to me like they're saying it doesn't apply. There's two separate questions. There's always two separate questions about an arbitration. So in other words, what you're saying is that what we need to decide is that there is magic language that must be used, or you do not properly raise a challenge to the delegation clause. No, it's not magic language, but you do have to challenge the validity or enforceability. And you can't do that by saying the delegation clause does not apply. Correct. Because that's a question of scope. You say it is. Is there a case that says that only means it is a... Yes, I mean, this goes back to Moses Cone. I mean, the Supreme Court, there are decades of cases talking about this specific issue. They talk about... There's no question there's decades of cases that talk about the nature of the attack and the need to challenge the delegation clause. My question is, do any of those cases say that the challenge raised as worded by OFR does not and will not ever constitute a challenge to the applicability of the delegation clause? But that's exactly the point, Your Honor. It's applicability versus validity. So when you look at an arbitration provision, there's always two questions. One is, is the arbitration clause broad enough to encompass the dispute? And the second question is, is it valid under generally applicable contract law? Okay, so if I come in and say this arbitration clause doesn't apply to our dispute, but I agree that the contract is valid, that's one type of challenge. And that's the challenge they may hear. If I come in, on the other hand, and say, yes, this is a broad arbitration clause, I don't dispute that it covers the dispute. I don't contend that it doesn't cover this dispute. But it was procured by fraud. It was unconscionable. It was somehow otherwise improper, not valid. That's the second type of challenge. And that's the point. Here, they only made the first type of challenge. And when you are in that type of challenge, you look at it. So we're saying that the entire agreement was procured by fraud and misrepresentation. Well, it's unconscionability. There's no claim of fraud. But that goes back to the specific indirect point. So once you start to challenge the validity of an arbitration provision, and then a delegation clause, you have to specifically and directly challenge the validity of the delegation provision itself. It's not enough to come in and say, well, I challenge the entire arbitration provision as unconscionable. And it necessarily included a challenge to the delegation provision. So when you say the trial court improperly raised this themselves, I assume you brought that to the trial court's attention. I did. That was part of the discussion on pages 18 and 19 of the record. That they are not challenging the validity and enforceability of the delegation provision, only its scope. And the court's response to that was? He had already decided that. And then at one point, he turned basically to Onken's counsel and said, are you challenging the validity of the delegation provision in addition to the arbitration provision? And he said, yes, which of course he would. I would do the same thing if I were in his position. So, okay, so now it's clear they have. But that's the problem. So if the circuit court hadn't raised it on its own. Onken, up to that point, until the circuit court raised it, had never challenged the validity or enforceability of the delegation provision. So there's a time limit in the proceedings in which you can raise it, otherwise it can't be raised. I think so. There's a case that says that. The cases all say that if you, well, okay, so there's a separate issue here, maybe, which is can you raise something at the end of oral argument in the trial court after the trial court has already erroneously decided an issue, is that sufficient? I mean, if that's sufficient, then I guess, yes, they raised it. But I don't think it's sufficient. Probably what we call post-trial motion. If the circuit court had properly looked at the issue, looked at the broad nature of the delegation provision, looked at the incorporation of the AAA rules, he could have decided it without even having the oral argument. He could have decided it without sui sponte, raising the issue. Well, we're not here on what he could have done. We're here on what happened. Well, here's the other point, your honor. Onkin still has never challenged the validity or enforceability of the AAA rules incorporation. Even in their appellate brief, after we raised this issue, they didn't challenge the validity or enforceability of the incorporation of the AAA rules. They argued that we had waived that by not properly raising it in the trial court. Isn't that right? And of course, we did raise it in the trial court. We explicitly raised it in the same terms that we raised it in our briefs here, that it's a separate and independent basis for acquiring delegation to the arbitrator of these questions. And on that basis alone, I think you can remand to the trial court with direction to order Onkin to arbitrate these gateway questions about what the Nebraska Uniform Arbitration Act means, whether it applies, and so forth. But if you get past that issue, if you find that Onkin's somehow raised the AAA rules clause, somehow raised the delegation provision even though they walked away from it in their briefs, there's still a problem, which is that the circuit court erred. And this is the second issue. The circuit court erred by allowing the generic choice of lock clause, selecting Nebraska's substantive law to trump the incorporation of the AAA rules. And that violates both United States Supreme Court precedent and also Illinois Appellate Court precedent from the third district of this court. And to be clear, this is not a preemption issue. If you look at both Preston, which is the United States Supreme Court case, and LRN Holding, which is the Illinois Appellate Court case, they both say, LRN Holding quoting Preston, but they both use the same language. The dispositive issue is not whether the FAA quote unquote preempts state law, but rather who decides. Under LRN Holding, it's very clear, unless the parties expressly agree to arbitrate in accordance with the state law, the FAA and the AAA rules are what control. And in LRN, the clause said, the agreement shall be interpreted under and govern in accordance with the laws of the state of Illinois. The clause in section 13 of the RPA states, the agreement shall be exclusively governed by and construed in accordance with the laws of Nebraska. So it's basically, I guess they flipped governed by and in accordance with, construed in accordance with. But it's important to note the distinction here. If the clause doesn't say arbitration in accordance with the laws of the state, then the State Arbitration Act doesn't apply. And I would also point out that in section 13 in the choice of law clause, they talk about any matter concerning this agreement that is not subject to the dispute resolution provisions of paragraph 13. So in the choice of law clause, it's recognizing that there's a separate arbitration issue, there's separate arbitration law. No one in there agrees to arbitrate under Nebraska law or the Nebraska Uniform Arbitration Act. And both LRN Holding and Preston held that when you incorporate the AAA rules, as the RPA does, that trumps a generic choice of law clause, which is what the RPA has. So if you look at LRN Holding, it's almost identical in terms of the way that contract is structured and the way this court should analyze it to what that court did. Both agreements involved the incorporation of the AAA rules. Neither agreement required arbitration in accordance with state law. And LRN Holding held that the incorporation of the AAA rules trumped that generic state law, that generic choice of law clause. Same thing under Preston. Preston says the best way to harmonize the AAA rules and the generic choice of law clause is to read the choice of law to encompass only the, quote, substantive rights and obligations of the parties, end quote, but not, quote, special rules limiting the authority of arbitrators, end quote. Now, Ocken's brief doesn't even mention Preston. They obliquely argue that the Nebraska Uniform Arbitration Act doesn't allocate authority between arbitrators and courts, but that's exactly what it does. It says courts can hear one type of challenge, arbitrators can hear a different one. It's no different than what's going on in these other cases. And just to be clear, the Nebraska Uniform Arbitration Act does not provide a substantive right or obligation. The prohibition on arbitration in this context, section 25-2602.01F4, is in the Nebraska Uniform Arbitration Act, not the Nebraska Insurance Code. There's no similar provision elsewhere. And if you look at what the Nebraska Supreme Court itself is doing, they don't treat it as substantive. Both the- Mr. Gonzales, you're out of time, but you'll have time in rebuttal. Thank you, Your Honor. I just direct your attention to the Speech case. Okay, thank you. Mr. Hermans. May it please the court, counsel. Applied appeals from two orders entered by the circuit court. First, they appeal from Judge Atterbury's September 1, 1917, or 2017 order, denying Applied's motion to compel arbitration of what they call the gateway issues. Arbitration under the delegation clause. And Judge Atterbury ruled he was going to decide that issue, as well as the validity of the arbitration clause itself. They also appeal from Judge Atterbury's March 22, 2018 order, denying Applied's motion to compel arbitration because the arbitration clause at issue was invalid. Both of those orders should be affirmed. Very briefly, as an initial matter, I believe this court does not have jurisdiction to entertain the appeal of the September 1 order. Judge Atterbury's September 1 order was immediately appealable under Rule 307, because it denied Applied's motion to enforce the delegation clause of the arbitration provision. Judge Atterbury determined that OFR had challenged the validity of the delegation clause, as well as the arbitration clause, necessitating that the court decide the validity of both arbitration agreements, and then set a discovery schedule and a trial schedule for that. That gateway decision should have been appealed within 30 days, but was not. The cases that Applied has cited to, where this court does have jurisdiction of orders on the path to the order that ultimately is appealable as of right, none of those involved orders that had an independent basis to be appealed. Substitution of judge, grant or denial isn't immediately appealable. A discovery order isn't immediately appealable. But when Judge Atterbury determined that he was going to decide those questions, and then set a schedule, as the record reflects, Judge Atterbury even set a status out because he recognized there were potential for an appeal here, and they didn't take it. So that issue could be affirmed simply because the appeal wasn't timely. In any event, however, Judge Atterbury's September 1 order should be affirmed on the merits. From the start, OFR challenged the validity of the delegation provision. In the second paragraph of our opposition to Applied's motion to compel, OFR argued that the plain language of the arbitration provision makes clear that the question of validity was not delegated to any contemplated arbitration panel, but remains with the court. Similarly, later in that brief, we specifically addressed the AAA rules. And we stated that the arbitration provision does not incorporate any AAA rules. Indeed, contrary to accurate representation, there is no reference to any rules of the AAA in the arbitration provision, but only certain provisions. So we did challenge both the delegation provision itself, as well as the incorporation of the AAA rules. In addition, in our motion papers and in our hearings before Judge Atterbury, we raised several arguments directed right to the delegation clause. We challenged it as illegal. We challenged it as lacking clear and unmistakable evidence of an agreement to delegate. And we raised issues of procedural unconscionability and substantive unconscionability. In the face of these challenges, Judge Atterbury correctly determined that he would decide the validity of the agreement to arbitrate and the 9-1 order should be affirmed. The circuit court's March 22nd, 2018 order also correctly ruled that the delegation clause and the arbitration provision are unenforceable. Any agreement to arbitrate an insurance-related contract dispute in Nebraska, under Nebraska law, is illegal. And it's indisputable here that the RPA provides that Nebraska law exclusively governs the agreement, capital A, defined term, every aspect of the agreement is subject to Nebraska law. The Nebraska legislature exercised its regulatory power over the business of insurance when it declared that any agreement concerning or relating to an insurance policy is not subject to arbitration. There are two Nebraska Supreme Court cases, Kremer and Citizens 2, which came down intervening between the trial court's decision and filing of our briefs. Both of those cases are this Nebraska Supreme Court confirming that that provision in the Nebraska Arbitration Act is substantive law and is the regulation of the Bill of Business of Insurance. Therefore, Judge Atterbury correctly observed and decided that pursuant to the McCarran-Ferguson Act, federal laws that are not related to the business of insurance, like the Federal Arbitration Act, must yield, or as the case law says, are reverse preempted by state insurance laws and regulations. And it's for these reasons that courts in Nebraska, California, Virginia, and New York have refused to enforce the arbitration provision at issue here because it's illegal. Applied sites to cases like Mass Robono and LRN Holdings to try and resurrect the provision. But those cases are easy to distinguish because none of them involve  Rather, those are all cases that represent efforts by courts to resolve a conflict between state laws not related to insurance and a conflicting provision in an arbitration clause. And in those instances under the FAA, those state law provisions, because they don't have anything to do with insurance, are preempted by the FAA and cannot limit arbitration. Accordingly, I believe that this court should follow the precedent of the Nebraska Supreme Court and affirm Judge Atterbury's determination that the arbitration clause and the delegation clause of the 2012 RPA are invalid and unenforceable. In a last-ditch effort to save its clause, Applied tries to invoke the restatement of contracts and argues that the choice of law provision should be disregarded, as the comments in that provision state, as some sort of mistake. But the restatement doesn't save the day because there was no mistake. First of all, there's no factual dispute. We were before the court on summary judgment, and as the record indicated, both sides agreed there were no factual disputes. We are undeniably dealing with a contract of adhesion here. All these terms were dictated by Applied. It was a take-it-or-leave-it contract. So the restatement, as its comments indicate, it isn't even applicable because there was no bargaining between the parties here that was somehow defeated by this choice of law. Applied chose Nebraska law presumably because they believed there was some advantage to them having Nebraska law applied. Not surprising, they're part of Berkshire Hathaway, they're headquartered in Omaha, they're the principal place of businesses in Omaha, and they chose Nebraska law. That being said, when you say that Nebraska law exclusively governs the contract, that means you don't get to pick and choose and say, well, this part of Nebraska law applies, but this part, this isn't very helpful for us, so that part we're not going to apply. Moreover, if you think about it, one of Applied's main arguments that was rejected both by Judge Atterbury, Nebraska, California, New York, and California, that is related to an insurance policy. So it appears that Applied at the time, when they wanted Nebraska law, thought there was a way that this arbitration clause might evade the reach of the Nebraska's prohibition on arbitration of insurance contract-related disputes. Unfortunately for them, it was that belief that was erroneous, not the In any event, even if you disregard the choice of law mandate, as we set forth in our briefs, a conflict analysis would still take you back to Nebraska law, and once again, Nebraska law would require that this arbitration provision and the delegation provision are invalid. I'll leave it to the court whether you'd like me to go into the question of Judge Atterbury did not reach those grounds, but obviously, as we pointed out in our brief, those grounds are before the court. They could provide an alternative basis for the court to affirm, even if the court found for Applied on these other issues, which I don't think you should. I believe it's very well covered in our briefs, and I won't take up the court's time unless you have any questions on that. I think otherwise the order should be affirmed. Thank you, Mr. Hermans. Rebuttal argument? A couple of brief points. One, all of this discussion about preemption, about the Nebraska Uniform Arbitration Act, about what all these other courts have done, is premature because you still have to grapple with two questions. One, did Applied challenge the delegation provision and the incorporation of the AAA rules, the validity and enforceability of those two provisions? And the answer is no, not before the circuit court ruled on them. But second, in terms of choice of law, that is in a large sense what this comes down to. It's not a preemption question. I mean, the amount of times I've heard preemption, it just isn't relevant here under the case law, under precedent, under LRN holding. In terms of choice of law, the RPA does include a choice of law provision that selects Nebraska law, but it also includes the AAA rules. And the AAA rules require that the arbitrator and not the court decide these issues. They have never challenged the incorporation of the AAA rules as invalid or unenforceable. The contract and the parties specifically chose the AAA rules. That has meaning. And that is what courts around the country hold. When you incorporate the AAA rules, it functions as a delegation clause. They have never properly challenged that. The only challenge they made is that the 2012 RPA did not incorporate the AAA rules. And if you look at paragraph 13i, and I'm quoting, and this they didn't even raise in the trial court, all arbitration proceedings shall be conducted in the English language in accordance with the rules of the American Arbitration Association. It cannot be more clear that the 2012 RPA incorporates the rules of the AAA. That means all of these issues have to go to the arbitrator. In terms of Nebraska law and the Nebraska Uniform Arbitration Act, I just want to make one point, which is counsel raises Cramer and Citizens II. But he doesn't talk about Speece. And I think Speece is the most important case because in Speece, they had a contract that had a choice of law provision that said the law, and I'm quoting, the laws of the state of California shall apply to any substantive, evidentiary, or discovery issues. And the court there, the Nebraska Supreme Court, did not apply the California arbitration law. It applied the Nebraska Uniform Arbitration Act despite the fact that the contract required California substantive law to apply. That, to me, says that the Nebraska Uniform Arbitration Act is what it purports to be. It's an arbitration law. It's not substantive law. And thus, it doesn't apply here. It doesn't invalidate the arbitration provisions. If you have questions, I'm happy to answer them. Otherwise, thank you. Any questions? Thank you, Mr. Rosales. Thank you both. Case will be taken under advisement, and a breaking decision shall issue. Court stands at recess.